# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF MICHIGAN

**ALEXANDER MORRIS, individually;**

**CASE NO.:** _____

**HON.:** _____

**Plaintiff,**

**v.**

**Ascension Macomb Oakland Hospital,**

**Holly Jackson; and,**

**Greg Ciesielski,**

**Defendants.**

---

**Attorney for Plaintiff:**

**DAVIS LAW GROUP**
**Maurice Davis, Esquire**
**Michigan Bar No. P76203**
**27600 Northwestern Hwy, Suite 215**
**Southfield, MI 48034**
**(248) 469-8501 Phone**
**maurice@michigancriminallawyer.com**

**RAND LAW, LLC**
**Jasmine Rand, Esquire**
**Florida Bar No.: 77047**
**2525 Ponce de Leon Blvd., Ste. 300**
**Miami, FL 33134**
**(706) 424-1027 Phone**
**jasminerand@gmail.com**
**Attorney Pro Hac Vice**

---

There is no other pending or resolved civil action arising out of the same transaction or occurrence.

# COMPLAINT

**COMES NOW**, Plaintiff ALEXANDER MORRIS, Individually; and sues Ascension Macomb Oakland Hospital; jointly and severally, Defendants; and in support thereof alleges as follows:

## INTRODUCTION

1. This case arises out of the racial discrimination of Alexander Morris while attempting to obtain medical treatment on or about April 7, 2023, at Ascension Macomb Oakland Hospital located at: 11800 Twelve Mile Road, Warren, Michigan 48093.

## JURISDICTION, VENUE, AND PARTIES

2. This Court has jurisdiction of this action under the provisions of Title 28 of the United States Code §§ 1331 and 1343; Title VI of the Civil Rights Act of 1964; pursuant to 42 U.S.C. § 1981 for alleged racial discrimination in the making and enforcement of a contract.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendants reside within the District, and a substantial part of the events and omissions giving rise to the claims herein occurred in this District.

4. The named Plaintiff resides in this District.

5. The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees.

6. Defendant Ascension Macomb Hospital (hereinafter "Defendant Hospital") is a Michigan nonprofit corporation with its that is a operating a business; namely, a hospital at: 11800 Twelve Mile Road, Warren, Michigan 48093. Upon information and belief, Defendant Hospital owned, operated, and/or possessed the subject business and property, and/or managed

the property. Defendant Hospital is a recipient of Federal funding and received payments from Medicaid and Medicare, including payments made by Medicare for Plaintiff's treatment.

7. Defendant Holly Jackson was a nurse that worked for Defendant Hospital and is being sued in her individual capacity. Upon information and belief Defendant Holly Jackson is a resident of Macomb County.

8. Defendant Greg Ciesielski is a security guard that worked for Defendant Hospital and is being sued in his individual capacity. Upon information and belief Defendant Greg Ciesielski is a resident of Macomb County.

## FACTUAL ALLEGATIONS

9. Plaintiff Alexander Morris is an African American man and is the lead singer of the famous Motown group the "Four Tops." At the time of the incident the Four Tops were on a national music tour with the Temptations and had recently performed at the Grammy Awards.

10. On or about April 7, 2023; Plaintiff was transported to the Ascension Macomb Oakland Hospital emergency room via ambulance, and he presented to the emergency room with difficulty breathing and chest pain, he was on oxygen, and he had a significant known history of cardiac disease including the placement of stints and defibrillator. During his hospitalization, Plaintiff was ultimately diagnosed with a heart infraction that may require a heart transplant, pneumonia, and he suffered three seizures during his stay.

11. When he presented to the emergency room Plaintiff informed a nurse and a security guard that he was a member of the famous Motown group the "Four Tops," and that he had current security concerns due to stalkers and fans.

12. Shortly after check-in a nurse Holly Jackson, a White male security guard Greg Ciesielski, and a White male emergency room doctor Brandon Harris Fishman, DO racially profiled him and/or profiled him based upon a perceived disability and placed an order for a psychological evaluation for Plaintiff because they did not believe he was a singer or member of the "Four Tops." Doctor Brandon Harris Fishman, DO, the emergency room doctor who was on staff met with Plaintiff and interviewed him, Plaintiff informed him of his medical history, and informed him that he was having difficulty breathing and chest pain. Defendants and Brandon Harris Fishman, DO wrongfully assumed he was mentally ill when he revealed his identity as a celebrity figure. Defendants and/or Brandon Harris Fishman, DO made the decision to remove him from oxygen and pursue a psychiatric evaluation instead despite his clear symptoms of cardiac distress and significant medical history.

13. Plaintiff had a valid identification on his person and could easily have been identified as a singer in the Four Tops group.

14. Brandon Harris Fishman, DO ordered a psychological evaluation for Plaintiff instead of ordering the emergency medical treatment he needed. Plaintiff was denied the emergency medical care he needed due to his heart condition and pneumonia, and instead a security guard was instructed to ensure he was placed into a restraining jacket and/or a four-point restraint mechanism, removed his belongings, and Plaintiff was told he was going to have a "psych eval" or psychological evaluation. Plaintiff was referred to Virjaya Gopal Kotha, MD for the psychological evaluation.

15. Plaintiff asked if he could prove his identity by showing his identification card, and the White male security guard ordered him to "sit his Black ass down." None of the nursing staff intervened to stop the racial discrimination and mistreatment of Plaintiff. Upon information

and belief, the comment was made in the presence of the following emergency room nursing staff: Somer Laubert, Rachael Heaphy, Bernard Sudal, and/or Holly Jackson.  Upon information and belief none of the nursing staff reported the mistreatment or use of the racial slur to a supervisor.  Moreover, none of the nursing staff thought to simply ask for Plaintiff's identification.

16. Plaintiff told medical staff he was having difficulty breathing and asked for the oxygen back but was ignored.  Plaintiff asked to have the restraint device removed and asked for his personal belongings back so he could leave and seek treatment at another hospital, and he was told he was not free to leave; thus, he was falsely imprisoned and deprived of his personal property.  During this time his medical condition continuously declined and he was denied the medical treatment he desperately needed.

17. Several security guards were called to surround the nursing station to ensure Plaintiff could not leave.  During this entire incident Plaintiff was not being treated for his medical emergency, namely a severe heart condition and pneumonia.  Defendant Hospital and Defendant Jackson blatantly refused to provide Plaintiff with medical treatment due to his race and/or perceived mental disability.  Instead, Plaintiff received a deliberate misdiagnosis and received a lower standard of medical care based on his race that amounted to racial discrimination and delayed his actual diagnosis.

18. Finally, Plaintiff's wife came to the nursing station to collect his belongings and she saw what was transpiring and Plaintiff informed his wife that the doctors thought he was delusional.  Plaintiff's wife informed one of the security officers that he was actually a member of the Four Tops, but he took no action on Plaintiff's behalf, and he was left in the restraints and denied medical treatment.  A nurse came to Plaintiff's side, and Plaintiff asked to show the nurse

the video of him performing at the Grammys. The nurse realized Plaintiff was a member of the Four Tops, and the nurse went and got the emergency room doctor to inform him. The emergency room doctor returned and said he was cancelling the psychological evaluation.

19. The restraint jacket was finally removed, and he was placed back on oxygen. Plaintiff was restrained for approximately an hour and a half or 90 minutes. As aforementioned, during his hospitalization, Plaintiff was ultimately diagnosed with a heart infraction that may require a heart transplant, pneumonia, and he suffered three seizures during his stay.

20. Plaintiff was offered a $25.00 gift card to Meijers as an apology for the dehumanization and discrimination he faced at the hands of the hospital. He refused to accept the gift card.

21. Subsequent to the incident, a security guard that worked at the hospital contacted Plaintiff and informed him that Greg Ciesielski the security guard that restrained Plaintiff and made the racist comment, made racist comments and jokes to him and other coworkers about African Americans, and that he frequently used excessive force with patients.

22. The security guard who called Plaintiff also reported that he witnessed employees tampering with the internal incident report made on the incident involving Plaintiff, and he believed the use of racial slur was removed from the internal incident report, and he stated that employees were instructed not to discuss the incident. The security guard also stated that Greg Ciesielski was not disciplined or suspended because of the incident.

23. As a result of the above actions and inactions of Defendants as described above and below, Plaintiff suffered injuries and damages. Defendants are sued jointly and severally.

## COUNT I

## VIOLATION OF 42 U.S.C. § 1981 FOR RACIAL DISCRIMINATION IN CONTRACT-DEFENDANT HOSPITAL

24. Plaintiff incorporates paragraphs 1 through 23, as if fully stated herein. This count is pled in the alternative to all other counts contained herein.

25. Plaintiff is a member of the African American race within the meaning of 42 U.S.C.A. § 1981. At all times relevant, Plaintiff was a party in and/or beneficiary of, a contractual relationship between the Hospital, Plaintiff, and Plaintiff's insurance, for the purpose of providing him medical treatment within the meaning of 42 U.S.C. § 1981, as amended.

26. Plaintiff was denied his full and equal benefits, privileges, terms, and conditions of the contractual relationships enjoyed by non-Black patients, in violation of 42 U.S.C.A. § 1981, as amended.

27. Defendant Hospital is vicariously liable for its employees' behavior and for the disparate treatment and/or intentional discrimination against Plaintiff which created a hostile environment, on the basis of Plaintiff's race under 42 USC § 1981.

28. As a direct, legal, and proximate and/or "but for" cause of Defendant Hospital's **discrimination** in violation of Section 1981, Plaintiff suffered severe injuries and damages including conscious pain and suffering and death.

29. WHEREFORE, as a result of the above actions and inactions of Defendants, Plaintiff Alexander Morris sustained injuries and damages including but not limited to the following: economic damages, compensatory damages, physical injuries, psychological injuries, emotional pain and suffering, past and future lost wages, attorneys' costs and fees; and, punitive damages, in an amount to be proven at trial, but which is alleged to be in excess

of $75,000.00, including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable, based upon the following causes of action:

## COUNT II- TITLE VI OF THE CIVIL RIGHTS ACT OF 1964- DEFENDANT HOSPITAL

30. Plaintiff incorporates paragraphs 1 through 23, as if fully stated herein. This count is pled in the alternative to all other counts contained herein.

31. Plaintiff is a member of the African American race within the meaning of Title VI of the Civil Rights Act of 1964. At all times relevant, Defendant Hospital was a recipient of Federal funding and/or received Medicare and/or Medicaid payments from patients including Plaintiff.

32. As a recipient of Federal funding Defendant Hospital was prohibited from engaging in racial discrimination against Plaintiff pursuant to Title VI of the Civil Rights Act of 1964.

33. As discussed above, Plaintiff was denied medical care for his true medical emergency and was misdiagnosed and mistreated due to his race, and/or his true diagnosis was delayed, he was subjected to disparate treatment based upon his race, and his medical condition was worsened and/or exacerbated due to racial discrimination.

34. Defendant Hospital is vicariously liable for its employees' behavior and for the disparate treatment and/or intentional discrimination against Plaintiff.

35. As a result of Defendant Hospital's discrimination in violation of Title VI of the Civil Rights Act of 1964, Plaintiff suffered severe injuries and damages including conscious pain and suffering and death.

36. WHEREFORE, as a result of the above actions and inactions of Defendants, Plaintiff Alexander Morris sustained injuries and damages including but not limited to the following: economic damages, compensatory damages, physical injuries, psychological injuries, emotional pain and suffering, past and future lost wages, attorneys' costs and fees; and, punitive damages, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00, including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable.

### COUNT III- NEGLIGENCE- DEFENDANT HOSPITAL, DEFENDANT JACKSON, AND DEFENDANT CIESIELSKI

37. Plaintiff incorporates paragraphs 1 through 23 as if fully stated herein. This count is pled in the alternative to all other counts contained herein.

38. This is an action for negligence brought pursuant to the laws of the state of Michigan against Defendants Hospital, Jackson, and Ciesielski.

39. At all material times hereto, Defendants Hospital owed a duty as the owner operators of the hospital to Plaintiff's decedent who was an invitee on the subject property at the time of the incident. Defendants owed a duty to maintain the property reasonably safe condition, to exercise ordinary care to protect an invitee from unreasonable risks known to the owner or possessor, or that should have been known to the owner or possessor with the exercise of ordinary care. Defendant Hospital owed duties to ensure that any security measures undertaken were implemented in a reasonably safe manner. Defendant Hospital breached the duties owed by failing to maintain the property reasonably safe condition and by employing and failing to properly supervise, train, and monitor security guard Defendant Ciesielski who was known to use excessive force with patients and to engage in racist behavior, to exercise ordinary care to protect an invitee

from unreasonable risks known to the possessor. Defendant Hospital failed to ensure that Defendants promulgated proper policies and procedures to fulfill said duties and/or properly supervised and trained their employees to implement policies/procedures and/or security measures.

40. Defendants Hospital, Defendant Jackson and Defendant Ciesielski owed a heightened duty due to the creation of a special relationship based upon taking a patient experiencing a medical emergency into their care; in addition to owing a duty of reasonable care to Plaintiff, to ensure that he received emergency medical treatment and that he was not subjected to racial discrimination that resulted in a delay in his medical care.

41. Defendants breached said duty of heightened care and reasonable care as stated above, by denying Plaintiff medical treatment, delaying his diagnosis, engaging in racially discriminatory behavior, and worsening and exacerbating his medical condition. Defendants breached the duties owed and actually and proximately caused Plaintiff's injuries and damages for which Defendants' are liable including severe physical injuries, psychological injuries, and emotional injuries and damages that are permanent, ongoing and will continue into the future.

42. WHEREFORE, as a result of the above actions and inactions of Defendants, Plaintiff Alexander Morris sustained injuries and damages including but not limited to the following: economic damages, compensatory damages, physical injuries, psychological injuries, emotional pain and suffering, past and future lost wages; and, attorneys' costs and fees, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00, including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable.

**COUNT IV**
**GROSS NEGLIGENCE- DEFENDANT HOSPITAL, DEFENDANT JACKSON, AND**

## **DEFENDANT CIESIELSKI**

43. Plaintiff incorporates paragraphs 1 through 23 and 37-42 as if fully stated herein. This count is pled in the alternative to all other counts contained herein.

44. This is an action for gross negligence brought pursuant to the laws of the state of Michigan against Defendants Hospital, Jackson, and Ciesielski.

45. As stated above Defendants Hospital, Jackson, and Ciesielski owed numerous duties to Plaintiff and Defendants' breached those duties actually and proximately causing Plaintiffs' injuries and damages.

46. Defendants' breaches of the duties owed to Plaintiff were so reckless that they demonstrated a substantial lack of concern for whether he suffered an injury; in particular, Defendants racial discrimination resulted in denial/delay of emergency medical care for a severe medical emergency and resulted in racial discrimination.

47. As a direct and proximate result of Defendants Hospital, Jackson, and Ciesielsk collective breach of duties, actions and inactions, Defendants actually and proximately caused Plaintiff to suffered severe physical injuries, psychological injuries, and emotional injuries and damages that are permanent, ongoing and will continue into the future.

48. WHEREFORE, as a result of the above actions and inactions of Defendants, Plaintiff Alexander Morris sustained injuries and damages including but not limited to the following: economic damages, compensatory damages, physical injuries, psychological injuries, emotional pain and suffering, past and future lost wages, attorneys' costs and fees; and, punitive damages, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00, including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable.

## COUNT V
## BATTERY – DEFENDANT HOSPITAL AND DEFENDANT CIESIELSKI

49.     Plaintiff reincorporates paragraphs 1-23 as if fully set forth herein.  This count is pled in the alternative to all other counts contained herein.

50.     This is an action based on Defendant Ciesielski's battery resulted in the unwanted and offensive touching with the intent to cause injury sustained by Plaintiff, namely the use of restraint devices on his person when he was seeking medical attention and the subsequent refusal to remove them.

51.     The unlawful touching of his person resulted in a harmful and offensive unwanted bodily contact that resulted in severe and ongoing permanent injuries and damages to Plaintiff

52.     Defendant Hospital is liable for the battery of Plaintiff and is vicariously liable as employer of Defendant Ciesielski.

53.     Defendant Ciesielski was in the course and scope of his employment, providing services to Defendant Hospital at the time of the incident and in the furtherance of its business interest; and as such, Defendant Hospital is vicariously liable for the actions and/or omissions of its employees and/or agents.

54.     The collective and individual actions and omissions of Defendant Ciesielsk and Defendant Hospital actually and proximately caused Plaintiff to suffer ongoing and permanent injuries and damages.

55.     WHEREFORE, as a result of the above actions and inactions of Defendants, Plaintiff Alexander Morris sustained  injuries and damages including but not limited to the following: economic damages, compensatory damages, physical injuries, psychological injuries, emotional pain and suffering, past and future lost wages, attorneys' costs and fees; and, punitive damages, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00,

including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable.

## COUNT VI

## FALSE IMPRISONMENT- DEFENDANT HOSPITAL AND DEFENDANT CIESIELSKI

56. Plaintiff incorporates paragraphs 1 through 23 as if fully stated herein.  This count is pled in the alternative to all other counts contained herein.

57. This is an action for false imprisonment brought pursuant to the laws of the state of Michigan against Defendant Hospital and Defendant Ciesielski.

58. At all material times hereto, Defendant Hospital employed Defendant Ciesielski. Defendant Ciesielski was in the course and scope of his employment with Defendant Hospital at the time of the subject incident, and in furtherance of its business interests.  As such, Defendant Hospital is vicariously liable for its employee's actions.

59. Defendant Hospital employed Defendant Ciesielski directed and otherwise caused Plaintiff's physical movements to be kept in custody and/or control when he was restrained in a restraint gown and/or four-point restraint mechanism against his will.

60. Defendant Hospital employed Defendant Ciesielski caused Plaintiff to be confined, detained, and restrained against his will and said false imprisonment was unlawful.

61. Defendant Hospital employed Defendant Ciesielski's actions and omissions actually and proximately caused Plaintiff to suffer ongoing and permanent injuries and damages.

62. WHEREFORE, as a result of the above actions and inactions of Defendants, Plaintiff Alexander Morris sustained  injuries and damages including but not limited to the following: economic damages, compensatory damages, physical injuries, psychological injuries, emotional pain and suffering, past and future lost wages, attorneys' costs and fees; and, punitive

damages, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00, including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable.

## COUNT VII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT HOSPITAL AND DEFENDANT CIESIELSKI

63. Plaintiff incorporates paragraphs 1 through 23 as if fully stated herein. This count is pled in the alternative to all other counts contained herein.

64. This is an action for intentional infliction of emotional distress brought pursuant to the laws of the state of Michigan against Defendant Hospital, Defendant Jackson, Defendant Ciesielski.

65. At all material times hereto, Defendant Hospital employed Defendant Ciesielski and Defendant Jackson, and they were in the course and scope of his employment with Defendant Hospital at the time of the subject incident, and in furtherance of its business interests. As such, Defendant Hospital is vicariously liable for its employee's action.

66. Defendants Jackson and Defendant Ciesielski directed and otherwise caused Plaintiff to experience deliberate or reckless infliction of mental suffering by restraining him against his will, falsely imprisoning him, and using racial discriminatory language against him. Defendant Ciesielski's actions were outrageous conduct and beyond the bounds of decency in a civilized society.

67. Defendant Jackson and Defendant Ciesielski's misconduct caused the severe mental and psychological suffering and damages experienced by Plaintiff.

68. WHEREFORE, Defendant Hospital, Defendant Jackson, Defendant Ciesielski's actions and omissions actually and proximately caused Plaintiff to suffer ongoing and permanent

injuries and damages.

69. WHEREFORE, as a result of the above actions and inactions of Defendants, Plaintiff Alexander Morris sustained injuries and damages including but not limited to the following: economic damages, compensatory damages, physical injuries, psychological injuries, emotional pain and suffering, past and future lost wages, attorneys' costs and fees; and, punitive damages, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00, including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable.

## COUNT VIII

## VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT AGAINST DEFENDANT HOSPITAL

70. Plaintiff incorporates paragraphs 1 through 23 as if fully stated herein. This count is pled in the alternative to all other counts contained herein.

71. The Americans with Disabilities Act Title III, prohibits discrimination in the form of disparate treatment against a person based on his or her disability or perceived disability in public accommodations including hospitals. Defendant Hospital operates a hospital and provides medical treatment and as such is a public accommodation.

72. Defendant Hospital and its employees perceived Plaintiff Alexander Morris to have a mental disability and ordered him a psychiatric evaluation, removed him from oxygen and denied him the emergency medical treatment he desperately needed worsening his medical condition. Even if Plaintiff Alexander Morris was suffering from a psychological disorder, he was clearly in need of emergency medical intervention for cardiac issues and pneumonia and should not have been taken off of oxygen or denied emergency medical treatment.

73. Plaintiff was denied emergency medical treatment due to a perceived mental

disability or psychological disorder.

74. Defendant Hospital did not refuse to provide emergency medical treatment to patients experiencing a medical emergency who did not have a psychological disorder or disability and/or perceived psychological disorder or disability.

75. Defendant Hospital discriminated against Plaintiff by denying him emergency medical services based upon his cardiac issues and pneumonia, by removing him from oxygen, and/or otherwise subjected him to disparate treatment. Moreover, non-disabled and/or non-intellectual/developmentally disabled perceived individuals were not subjected to discrimination or denied medical treatment.

76. WHEREFORE, as a result of the above actions and inactions of Defendants, Plaintiff Alexander Morris sustained injuries and damages including but not limited to the following: economic damages, compensatory damages, physical injuries, psychological injuries, emotional pain and suffering, past and future lost wages, attorneys' costs and fees; and, punitive damages, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00, including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable.

## PLAINTIFF DEMANDS A TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ALEXANDER MORRIS Individually, sues Defendants Ascension Macomb Oakland Hospital for damages as set forth herein in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs including but not limited to the following: economic damages, compensatory damages,

physical injuries, psychological injuries, emotional pain and suffering, past and future lost wages, attorneys' costs and fees; and, punitive damages, in an amount to be proven at trial, but which is alleged to be in excess of $75,000.00, including interest, together with costs and reasonable attorneys' fees incurred herein, and such other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: June 7, 2024.

Respectfully submitted,

*/s/ Maurice Davis*
Maurice Davis, Esquire
DAVIS LAW GROUP
Michigan Bar No. P76203
27600 Northwestern Hwy, Suite 215
Southfield, MI 48034
TEL: (248) 469-8501
maurice@michigancriminallawyer.com

/s/Jasmine Rand
**Jasmine Rand, Esquire**
FBN: 0077047
**RAND LAW, L.L.C.**
2525 Ponce de Leon Blvd., Ste. 300
Miami, Florida 33134
(305) 906-6400 Telephone
(305) 503-9235 Facsimile
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to all Defendants electronically.

*/s/Jasmine Rand*
Jasmine Rand, Esquire

*/s/Maurice Davis*
Maurice Davis, Esquire